# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE OZUNA,<br><br>                  Plaintiff,<br>vs.<br><br>HOME CAPITAL FUNDING; SAN DIEGO COUNTY REAL ESTATE SERVICES; COUNTRYWIDE HOME LOANS; and all other claimants of whatsoever kind and character against real property commonly known as 4342 Highland Avenue, #3 San Diego, CA 92115; and DOES 1 through 100 inclusive,<br><br>                  Defendants. | CASE NO. 08-CV-2367 - IEG (AJB)<br><br>**ORDER GRANTING DEFENDANT COUNTRYWIDE HOME LOAN'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[Doc. No. 21-3.] |

    Presently before the Court is defendant Countrywide Home Loans's ("Countrywide") motion to dismiss Plaintiff's first amended complaint for failure to state a claim. (Doc. No. 21-3.) Plaintiff filed an opposition and Countrywide replied.

    The Court finds the motion appropriate for disposition without oral argument pursuant to Civil Local Rule 7.1(d). For the reasons stated herein, the Court GRANTS Countrywide's motion to dismiss.

## FACTUAL BACKGROUND

    This matter concerns a loan secured by Plaintiff Jose Ozuna's ("Plaintiff") real property at 4342 Highland Avenue, #3, San Diego, California 92115 (the "Property"). On January 5, 2006, Plaintiff obtained the loan from defendant Home Capital Funding ("Home Capital"). Defendant

1  San Diego Real Estate Services ("Real Estate Services") acted as the broker for the loan.
2  Countrywide is the loan servicer.

3  During the issuance of the loan, Home Capital and Real Estate Services allegedly violated
4  both federal and state laws.  First, Home Capital and Real Estate Services allegedly misrepresented
5  the interest rate and material terms of the loan.  Second, Home Capital and Real Estate Services
6  allegedly failed to disclose, among other things, Plaintiff's right to cancel.  Third, Plaintiff claims
7  the terms of the loan could not be reasonably understood by the average consumer.  Regarding the
8  loan servicing, Plaintiff alleges Countrywide failed to give required notices and disclosures, and
9  failed to adequately respond to Plaintiff's requests for information.

10  Subsequently, Plaintiff defaulted on the loan payments, and Countrywide initiated
11  foreclosure proceedings on the Property.

## PROCEDURAL HISTORY

13  On December 19, 2008, Plaintiff filed the original complaint.  (Doc. No. 1.)  Countrywide
14  filed a motion to dismiss the complaint for failure to state a claim (Doc. No. 9), which the Court
15  granted in part and denied in part on August 13, 2009 (Doc. No. 17).

16  On August 31, 2009, Plaintiff filed a first amended complaint ("FAC"), alleging nine
17  causes of action: (1) violation of the Real Estate Settlement Procedures Act; (2) violation of the
18  Truth in Lending Act; (3) violation of California Civil Code § 1632; (4) violation of California
19  Business and Professions Code § 17200; (5) negligent misrepresentation; (6) fraud; (7) rescission;
20  (8) quasi contract; and (9) determination of validity of the lien.  (Doc. No. 19.)  Plaintiff's FAC
21  adds four new causes of action, and omits two that were brought in the original complaint.[1]

22  On September 18, 2009, Countrywide filed the instant motion to dismiss all nine causes of
23  action for failure to state a claim.  (Doc. No. 21-3.)  Countrywide has filed a request for judicial
24  notice of documents in support of the motion to dismiss (Doc. No. 21), and Plaintiff has filed a
25  request for judicial notice of documents in support of the opposition.  (Doc. No. 27.)

---

[1] Countrywide argues that the Court's August 13, 2009 Order granted Plaintiff leave to amend the complaint to cure the deficiencies set forth in the Order, but did not give Plaintiff leave to add new claims.  However, pursuant to Federal Rule of Civil Procedure 15, Plaintiff may amend the complaint once as a matter of course before being served with a responsive pleading, and Countrywide has not yet filed an answer.

# DISCUSSION

## I.   Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) (2009). A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996).

To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1939 (2009) (citing Twombly, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 1949 (citing Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (citing Twombly, 550 U.S. at 557).

Furthermore, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citation omitted). In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526, (1983). Also, the court need not accept "legal conclusions" as true. Iqbal, 129 S.Ct. at 1949. However, "[w]hen there are well-pleaded factual

1  allegations, a court should assume their veracity and then determine whether they plausibly give
2  rise to an entitlement to relief." Id. at 1941.

4  II.     Request for Judicial Notice
5          In ruling on a motion to dismiss for failure to state a claim, "a court may generally consider
6  only allegations contained in the pleadings, exhibits attached to the complaint, and matters
7  properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).
8          Additionally, "a court may consider a writing referenced in a complaint but not explicitly
9  incorporated therein if the complaint relies on the document and its authenticity is unquestioned."
10 Id. (quoting Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir.1998), *superseded by statute on other*
11 *grounds as stated in* Abrego v. Dow Chem. Co., 443 F.3d 676 (9th Cir. 2006)).  The purpose of
12 this rule is to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting
13 documents upon which their claims are based.  Id.  In considering such a writing, the court does
14 not convert the motion into one for summary judgment under Rule 56.  Parrino, 146 F.3d at 706
15 n.4 (noting that where an attached document is integral to the plaintiff's claims and its authenticity
16 is not disputed, the plaintiff "obviously is on notice of the contents of the document and the need
17 for a chance to refute evidence is greatly diminished").

18         A.     Countrywide's Request
19         On September 18, 2009, Countrywide filed a request for judicial notice of the following
20 documents relating to the loan origination in this case: (1) "Notice of Right to Cancel," dated
21 January 5, 2006; (2) "RESPA Servicing Disclosure," dated January 5, 2006; (3) "Notice of
22 Assignment, Sale, or Transfer of Servicing Rights"; (4) "Borrower's Acknowledgment of
23 Disclosures," dated January 5, 2006; (5) "Truth-in-Lending Disclosure Statement," dated
24 December 19, 2005; and (6) "Federal Truth-in-Lending Disclosure Statement," dated January 5,
25 2006.  Countrywide also requests judicial notice of documents filed in the United States District
26 Court for the Southern District of California in the case of Delino v. Platinum Community Bank, et
   al., Case No. 09-CV-00288-H (AJB).
27
           The Court may properly consider documents relating to the loan origination. Plaintiff's
28 FAC relies on these notices and disclosures, or the lack thereof, and Plaintiff does not question

their authenticity. The documents filed in the case of <u>Delino v. Platinum Community Bank, et al.</u> are public records also properly subject to judicial notice. Accordingly, the Court GRANTS Countrywide's request.

### B. Plaintiff's Request

On October 30, 2009, Plaintiff filed a request for judicial notice of the several documents in support of his opposition.[2] The Court finds they have no bearing on the Court's findings in this order. Accordingly, the Court DENIES AS MOOT Plaintiff's request for judicial notice.

## III. Analysis

### A. First Cause of Action: Violation of RESPA

Plaintiff alleges Countrywide violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617 (2009), which protects consumers from unnecessarily high settlement charges and abusive mortgage practices in connection with federally related mortgage loans. See 12 U.S.C. § 2601 (2009). Plaintiff alleges Countrywide violated RESPA in two ways: (1) by failing to adequately respond to his Qualified Written Requests ("QWRs") and (2) by failing to provide certain disclosures at the loan's origination. (FAC ¶¶ 40-41.)

#### 1. Qualified Written Requests

Generally, if the loan servicer of a federally related mortgage loan receives a QWR from the borrower for information relating to the servicing of such loan, the loan servicer shall provide a written response within 20 days. 12 U.S.C. § 2605(e)(1)(A). A "QWR" is defined as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that --
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer

---

[2]Plaintiff requests judicial notice of the following documents: (1) "Mortgage Loan Bulletin" dated Spring 2004, issued by the California Department of Real Estate; (2) "Contracting with Spanish-Speaking Customers: A Guide to Business Operators' Responsibility Under California Law," issued by the California Department of Consumer Affairs; (3) "Brown Sues Countrywide for Mortgage Deception, issued by the California Office of the Attorney General"; and (4) "Attorney General Brown Announces Landmark $8.68 Billion Settlement with Countrywide," issued by the California Office of the Attorney General.

regarding other information sought by the borrower.

Id. § 2605(e)(1)(B). When the loan servicer receives a QWR, it must either correct the borrower's account, or, after conducting an investigation, provide the borrower with a written explanation of: (1) why the loan servicer believes the account is correct, or (2) why the requested information is unavailable. See id. § 2605(e)(2).

Plaintiff alleges Countrywide "received Qualified Written Requests . . . and failed to adequately respond to Plaintiff's requests for information." (FAC ¶ 20.) Plaintiff also contends the FAC acts as an additional QWR. (FAC ¶ 6.) Plaintiff's allegations are insufficient. Numerous courts have dismissed similar claims, requiring plaintiffs to plead additional facts in order to state a claim for relief under RESPA. See, e.g., Delino v. Platinum Cmty. Bank, 628 F. Supp. 2d 1226, 1231-32 (S.D. Cal. 2009) (plaintiff failed to allege to whom specifically plaintiff made QWRs, when plaintiff made such requests, how defendants failed to respond to such requests, if the 60-day statutory period for response had lapsed, and how defendant met the statutory definition of a "servicer"); MorEquity, Inc. v. Naeem, 118 F. Supp. 2d 885, 901 (N.D. Ill. 2000) (the purported QWR sought information about the validity of the loan and mortgage documents, but made no inquiry as to the status of the account balance; therefore, the request did not relate to "servicing" of the loan); Champlaie v. BAC Home Loans Servicing, LP, 2009 WL 3429622, at *7 (E.D. Cal. Oct. 22, 2009) (plaintiff failed to allege the purported QWR requested information related to servicing); Castro v. Home Capital Funding, 2009 WL 3618898, at *5 (S.D. Cal. Oct. 28, 2009) (plaintiff failed to allege the purported QWR was in writing); Pickard v. WMC Mortg. Corp., 2009 WL 3416134, at *8 (E.D. Cal. Oct. 21, 2009) (plaintiff failed to describe the purported QWR, attach the QWR, allege to whom such writing was sent, and allege actual damages); Morilus v. Countrywide Home Loans, Inc., 2007 WL 1810676, at *3-4 (E.D. Pa. June 20, 2007) (plaintiffs failed to provide any details concerning which parties received the QWRs).

Here, Plaintiff's FAC fails to state a claim because it does not allege to whom Plaintiff sent the QWRs, when Plaintiff made the QWRs, how Countrywide failed to adequately respond, or

whether the 60-day statutory period had lapsed.[3] Nor does Plaintiff describe the QWRs, allege the QWRs sought information related to the servicing of the loan, or allege the QWRs were in writing.

Plaintiff further contends that "this action and this document" (the FAC) constitutes a QWR. (FAC ¶ 6.) However, even if the FAC does constitute a QWR within the meaning of RESPA, Plaintiff cannot plausibly allege that Countrywide failed to timely respond to Plaintiff's QWR in the same document that contains Plaintiff's request, as the 60-day statutory period for response necessarily has not passed. See Delino v. Platinum Cmty Bank, 628 F. Supp. 2d 1226, 1232 (S.D. Cal. 2009); Walker v. Equity 1 Lenders Group, 2009 WL 1364430, at *5 (S.D. Cal. May 14, 2009).

### 2. Failure to Provide Notice and Disclosures

Section 2605 of RESPA requires lenders to disclose to the borrower whether the loan may be assigned, sold or transferred, and also requires loan servicers to: (1) notify a borrower in writing of any assignment sale, or transfer; (2) notify the borrower of any assignment, sale, or transfer of the loan servicing; (3) handle funds during a transfer appropriately; and (4) respond to borrower inquiries. 12 U.S.C. § 2605 (2009).

Plaintiff's allegations fail to state a claim.[4] First, Plaintiff alleges Countrywide "did not provide a proper notice of transfer." (FAC ¶ 21.) However, Countrywide has produced a document entitled "Notice of Assignment, Sale, or Transfer of Servicing Rights," bearing Plaintiff's name, address, and loan number, and indicating that servicing of the loan was transferred from Home Capital to Countrywide. (Def.'s Request for Judicial Notice [hereinafter "RJN"], Exhibit C.) Plaintiff does not allege how this notice is improper. Second, Plaintiff alleges Countrywide did not provide "a proper notice of bankruptcy or insolvency of originating lender." (FAC ¶ 21.) However, Section 2605 does not require loan servicers to provide such notice.

---

[3] Plaintiff argues in the opposition that he specified the dates he sent QWRs in a declaration attached to the original complaint. However, the Court does not consider this information in its determination, as it is not an allegation in the FAC or contained in an exhibit attached to the FAC.

[4] Plaintiff's FAC also contains the same allegations as in the original complaint, which the Court deemed insufficient in its August 13, 2009 Order. Plaintiff alleges: "a. There is a Note, a Deed and a set of Closing Instructions, all confusing, inconsistent and incomprehensible to the borrowers; b. The TILA Itemization lists many [sic] extraneous and excessive settlement charges; c. An Estimated Settlement was also prepared but not provided prior to the closing, instead it was dated the day after the aforementioned docs were executed." (FAC ¶ 41.)

Accordingly, the Court GRANTS the motion to dismiss Plaintiff's RESPA claims.

B.     Second Cause of Action: Violation of TILA

Plaintiff alleges Countrywide violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601-1693 (2009), as well as TILA's implementing regulation (known as "Regulation Z"), 12 C.F.R. § 226.23, by failing to provide adequate notice of Plaintiff's right to cancel the loan transaction and by failing to make other material disclosures at the time of the loan origination. (FAC ¶¶ 44-47.) Based on these violations, Plaintiff requests damages and rescission. (FAC ¶¶ 44, 47.)

1.     Damages Claim

a.     Statute of Limitations

Any action for TILA damages must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). As a general rule, the statutory period "starts at the consummation of the [loan] transaction." King v. California, 784 F.2d 910, 915 (9th Cir. 1986). Because any claim under Regulation Z is derivative of a TILA claim, the same statute of limitations applies to Regulation Z claims.

Here, because Plaintiff consummated the loan on January 5, 2006 and brought suit on December 19, 2008, over a year later, Plaintiff's claim for monetary damages would be time-barred. However, equitable tolling may be appropriate "in certain circumstances," such as when a borrower might not have had a reasonable opportunity to discover the fraud or nondisclosures at the time of loan consummation. Id. at 915. District courts have discretion to adjust the limitations period in cases where "the general rule would be unjust or frustrate the purpose of [TILA]." Id. The general applicability of equitable tolling often depends on matters outside the pleadings, and "is not generally amenable to resolution on a Rule 12(b)(6) motion." Supermail Cargo v. United States, 68 F.3d 1204, 1206 (9th Cir. Cal. 1995). When determining whether the statute of limitations has run on a motion to dismiss, a court may only grant the motion "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." Id.

In this case, Plaintiff alleges he is Spanish speaker who negotiated the loan primarily in

1  Spanish, but the loan documents he received were written in English.  (FAC ¶¶ 18-19.)  Reading
2  the FAC liberally, the Court finds applicability of equitable tolling in this case depends on factual
3  questions not clearly resolved in the pleadings; specifically, when Plaintiff had the "reasonable
4  opportunity" to discover the allegedly deficient disclosures.  Accordingly, the Court finds Plaintiff
5  has pled sufficient facts to support the applicability of equitable tolling.

6                                                      b.        TILA Violations

7       Civil liability under TILA applies to creditors.  See 15 U.S.C. § 1640(a).  Regulation Z
8  requires a creditor to make certain disclosures "clearly and conspicuously in writing, in a form that
9  the consumer may keep."  12 C.F.R. § 226.17 (2009).  Section 1641 also extends liability to the
10 assignee of a creditor "if the violation for which such action or proceeding is brought is apparent
11 on the face of the disclosure statement."  15 U.S.C. § 1641(a).  "[A] violation apparent on the face
12 of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined
13 to be incomplete or inaccurate from the face of the disclosure statement or other documents
14 assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter."
15 Id.  Section 1641 does not extend liability to a loan servicer as an assignee "unless the servicer is
16 or was the owner of the obligation."  Id. § 1641(f).

17      Here, Plaintiff alleges Countrywide is the loan servicer, and does not allege Countrywide
18 owned the loan obligation.  (FAC ¶ 4.)   Even if Plaintiff's allegation that Countrywide "purchased
19 or otherwise acquired unknown rights and/or responsibilities relating to Plaintiff's loan from
20 Home Capital" (FAC ¶ 31) could be construed as an allegation Countrywide owned the obligation,
21 Plaintiff still fails to state a claim.

22      Plaintiff alleges Countrywide violated Section 1635(a) by failing to correctly identify the
23 transaction, clearly disclose Plaintiff's right to rescind, disclose the effects of rescission, and
24 disclose the date the rescission period expired.  (FAC ¶ 45.)  Plaintiff also alleges the interest rates
25 on the Note and the Truth-in-Lending disclosure were deceptively presented and not consistent;
26 the APR was not correctly calculated; and the required payments were not fully disclosed.  (FAC ¶
27 46.)  However, Countrywide has produced several documents relating to the loan origination
28 which directly controvert Plaintiff's allegations.  Each document bears Plaintiff's signature, and
   Plaintiff has not contested their authenticity or alleged how they are improper.  First, the "Notice

of Right to Cancel," dated January 5, 2006, contains all the information Plaintiff alleges is missing - the loan number, Plaintiff's right to rescind, effects of rescission, and that the rescission period expired on January 9, 2006. (RJN, Exhibit A.) Second, the "Truth-in-Lending Disclosure Statement," dated December 19, 2005 (RJN, Exhibit E) and "Federal Truth-in-Lending Disclosure Statement," dated January 5, 2006 (RJN, Exhibit F) both clearly indicate the interest rates and required payments. Plaintiff alleges no factual basis for the allegation that the annual percentage rate was not correctly calculated. Finally, the document entitled "Borrower's Acknowledgment of Disclosures," dated January 5, 2006, states: "By signing below, I acknowledge that I have received a 'Good Faith Estimate' and all applicable disclosures required by the Truth in Lending Act." (RJN, Exhibit D.)

Without more facts, Plaintiff has failed to state a claim for monetary damages under TILA.

### 2. Rescission Claim

Subject to certain statutory limitations, TILA provides that in the case of any consumer credit transaction in which the loan is secured by the principal dwelling of the obligor, the obligor has the right to rescind the transaction for a limited amount of time. 15 U.S.C. § 1635. TILA and its regulations require "a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind." Id. § 1635(a); 12 C.F.R. § 226.23(b)(1). If the creditor provides such notice, TILA's "buyer's remorse" provision allows borrowers three business days to rescind the loan without penalty. Id. § 1635(a). If the creditor fails to deliver the notice and required material disclosures, the borrower may rescind the loan within three years after it was consummated. Id. § 1635(f); 12 C.F.R. § 226.23(a)(3). The obligor's right of rescission expires at the latest, "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f).

Plaintiff alleges he has a continuing right to rescind up to three years after the loan was consummated. (FAC ¶ 100.) However, as discussed above, the documents Countrywide has produced directly controvert Plaintiff's claim that Plaintiff did not receive the notice of right to rescind and other material disclosures at the loan origination. Therefore, based on the facts alleged, Plaintiff had three business days after consummation of the loan during which to rescind. Plaintiff does not allege he exercised his right to do so.

Accordingly, the Court GRANTS Countrywide's motion to dismiss Plaintiff's TILA claims for damages and rescission.

### C.     Third Cause of Action: Violation of California Civil Code § 1632

Plaintiff alleges Countrywide violated California Civil Code § 1632 *et seq.* by failing to provide documents and disclosures in Spanish, the language in which the parties allegedly negotiated the loan agreement. (FAC ¶¶ 50.)

California Civil Code § 1632(b) provides: "any person engaged in trade or business who negotiates primarily in Spanish . . ., orally or in writing, in the course of entering into any of the following [loan agreements], shall deliver to the other party . . . a translation . . . in the language in which the contract or agreement was negotiated, which includes a translation of every term and condition in that contract or agreement." Cal. Civ. Code § 1632(b) (2009). The types of loan agreements subject to this requirement are set forth in subsections 1632(b)(1)-(7). Generally, Section 1632 does not require a translation where a loan is secured by real property. Id. § 1632(b)(2). However, Section 1632(b)(4) contains an exception, which requires a translation where the transaction involves "a loan or extension of credit for use primarily for personal, family or household purposes" and the loan or extension of credit is subject to the provisions of the California Civil Code dealing with "real estate brokers,"[5] "industrial loan companies,"[6] or "finance lenders." See id. § 1632(b)(4).

Because Plaintiff's loan is secured by real property, the only issue is whether Plaintiff's loan falls within the Section 1632(b)(4) exception. However, Plaintiff does not allege Countrywide is a real estate broker, industrial loan company, or finance lender, or allege facts supporting such a claim. Therefore, based on the facts alleged, Countrywide was not required to provide a translation.

Accordingly, the Court GRANTS Countrywide's motion to dismiss Plaintiff's claim under Section 1632.

---

[5] Cal. Bus. & Prof. Code § 10240 (2009).

[6] Cal. Fin. Code § 18003 (2009) (defining "industrial loan company" as a "premium finance agency"); § 18560 (defining "premium finance agency" as a " industrial loan company incorporated under this division which, by the terms of its authority to engage in the industrial loan business, is permitted to issue or sell investment certificates").

D. Fourth Cause of Action: Violation of California Business and Professions Code § 17200

Plaintiff alleges that Countrywide violated California's unfair competition statute, which prohibits "any unlawful, unfair or fraudulent business act or practice."[7] Cal. Bus. & Prof. Code § 17200 (2009). Because Section 17200 is written in the disjunctive, it prohibits three separate types of unfair competition: (1) unlawful acts or practices, (2) unfair acts or practices, and (3) fraudulent acts or practices. Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 973 P.2d 527, 540 (Cal. 1999). By proscribing "unlawful" acts or practices, "Section 17200 'borrows' violations of other laws and treats them as unlawful practices independently actionable." Id. at 539-40.

The definition of "unfair" acts or practices in consumer actions is uncertain. There are two opposing lines of California appellate court opinions. See, e.g., Morgan v. Harmonix Music Sys, Inc., 2009 WL 2031765, at *4 (N.D. Cal. July 7, 2009) (noting the split in authority); Bardin v. DaimlerChrysler Corp., 39 Cal. Rptr. 3d 634, 639-48 (Ct. App. 2006) (same). "One line defines 'unfair' as prohibiting conduct that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." Id. (citing Smith v. State Farm Mut. Auto. Ins. Co. 113 Cal. Rptr. 2d 399, 415 (Ct. App. 2001). "The other line of cases holds that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." Bardin, 39 Cal. Rptr. 3d at 626 (citing Scripps Clinic v. Superior Court, 134 Cal. Rptr. 2d 101, 116 (Ct. App. 2003)).

The term "fraudulent" as used in Section 17200 "does not refer to the common law tort of fraud" but only requires a showing members of the public "are likely to be deceived." Puentes v. Wells Fargo Home Mortg., Inc., 72 Cal. Rptr. 3d 903, 909 (Ct. App. 2008) (quoting Saunders v. Superior Court, 33 Cal. Rptr. 2d 438, 441 (Ct. App. 1994). "Unless the challenged conduct 'targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on

---

[7]Countrywide argues that the claim is preempted by the Home Owners Loan Act ("HOLA"). Because Countrywide does not request judicial notice of any document stating that Countrywide is a federal savings association subject to HOLA, the Court declines to address this argument.

a reasonable consumer.'" Puentes, 72 Cal. Rptr. 3d at 909 (quoting Aron v. U-Haul Co. of Cal., 49 Cal. Rptr. 3d 555, 562 (Ct. App. 2006)).

### 1. Unlawful Acts or Practices

Plaintiff alleges Countrywide's business practices are "unlawful," based on violations of law alleged in the other causes of action. (FAC ¶ 55.) Because Plaintiff fails to state a claim under its other causes of action, Plaintiff's claim for "unlawful" business acts or practices fails.

### 2. Unfair Acts or Practices

Plaintiff alleges Countrywide's business practice of "brokering, executing and servicing" an unaffordable loan is "unfair" because it offends public policy and is "immoral, unethical, oppressive, and substantially injurious to consumers." (FAC ¶ 56-57.) Plaintiff also contends it is unfair because "the damage accruing to Plaintiff as a result of the defective loan significantly outweighs the reasons, justifications and motives of Defendants in brokering, executing and servicing the loan." (FAC ¶ 57.)

The Court need not decide which definition of "unfair" applies, because under either test, Plaintiff fails to state a claim. Plaintiff does not allege that Countrywide brokered or executed the loan, and Plaintiff's FAC makes only two specific references to Countrywide's servicing of the loan. First, Plaintiff alleges that Countrywide "did not provide Plaintiff a proper notice of transfer." (FAC ¶ 21.) However, Countrywide produces a document entitled "Notice of Assignment, Sale, or Transfer of Servicing, which directly controverts Plaintiff's allegations. (RJN, Exhibit C.) Plaintiff does not allege how this notice is improper. Second, Plaintiff alleges Countrywide "did not provide a proper notice of bankruptcy or insolvency of originating lender." (FAC ¶ 21.) Plaintiff does not "tether" this claim to violation of any law, and does not plead sufficient facts to support a finding that this failure rises to the level of being "immoral, unethical, oppressive, and substantially injurious to consumers." Nor does Plaintiff allege that Home Capital has in fact filed for bankruptcy or is insolvent. Therefore, Plaintiff fails to state a claim for an "unfair" act or practice in violation of Section 17200.

### 3. Fraudulent Acts or Practices

Finally, Plaintiff alleges "Defendants' business practices were fraudulent because their activities were deceptive to the public." (FAC ¶ 58.) Plaintiff contends that among other things,

1  "Defendants represented to Plaintiff that very favorable loans, loan terms and interest rates were
2  available, when they were not." (FAC ¶ 58.)  Because Plaintiff only refers to all the defendants
3  generally and does not allege Countrywide was involved in the loan origination, this claim fails.
4  Plaintiff alleges Countrywide "steps into the shoes of the Originating Lender," and that Defendants
5  are all agents, employees, and fiduciaries of each other (FAC ¶¶ 32, 35).  However, the Court need
6  not accept "legal conclusions" as true.  See Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949
7  (2009).

Accordingly, the Court GRANTS the motion to dismiss Plaintiff's claims under Section 17200.

### E. Fifth Cause of Action: Negligent Misrepresentation

Plaintiff alleges, to the extent any misrepresentation was not intentional, that Countrywide made a negligent misrepresentation by representing it had the right to foreclose on the Property. (FAC ¶ 62-65.)  "Negligent misrepresentation is a form of deceit, the elements of which consist of: (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." Fox v. Pollack, 226 Cal. Rptr. 532, 537 (Ct. App. 1986).

Plaintiff alleges Countrywide authorized Landsafe Title to record the Notice of Default on the Property. (FAC ¶ 63.)  Plaintiff contends this was a misrepresentation because it represented to Plaintiff that Countrywide "had the authority and right to foreclose on the loan, when in fact, it did not." (FAC ¶ 62-63.)  According to Plaintiff, Countrywide should have known "it did not have the authority or right to foreclose on the loan that was deficient at the origination stage. (FAC ¶ 64.)

Plaintiff fails to state a claim because the negligent misrepresentation claim is predicated on the other causes of action.  Plaintiff does not plead sufficient facts to support a finding that the loan was deficient for failure to provide required notices or disclosures or that the loan was fraudulently induced.  Thus, Plaintiff has not sufficiently pled there was a misrepresentation, because based on the facts alleged, Countrywide did have the authority to close on the loan.

1  Accordingly, the Court GRANTS Countrywide's motion to dismiss the negligent
2  misrepresentation claim.

3      F.      Sixth Cause of Action: Fraud

4      Plaintiff alleges Countrywide made a intentional misrepresentation by representing it had
5  the right to foreclose.  (FAC ¶ 85-86.)  Under California law, there are five elements of common
6  law fraud: (1) misrepresentation, (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable
7  reliance, and (5) resulting damage.  Gil v. Bank of Am., N.A., 42 Cal. Rptr. 3d 310, 317 (Ct. App.
8  2006).  Federal Rule of Civil Procedure 9(b) requires: "In all averments of fraud or mistake, the
9  circumstances constituting fraud or mistake shall be stated with particularity."

10      Plaintiff alleges Countrywide falsely represented that "the loan was validly entered into
11  and properly initiated free of unlawful or fraudulent inducements" and that it had "proper authority
12  to foreclose."  (FAC ¶ 85-86.)  Plaintiff contends Countrywide "intended to induce Plaintiff's
13  reliance" and that in unjustifiable reliance, Plaintiff continued to make payments, spent
14  "substantial time" trying to negotiate a loan modification, and "endured the emotional hardship
15  incident the threat [sic] of losing one's home."  (FAC ¶ 89.)

16      Plaintiff's fraud claim fails for the same reason the negligent misrepresentation claim fails.
17  Plaintiff does not plead sufficient facts to support a finding that the loan was deficient for failure to
18  provide required notices or disclosures or that it was fraudulently induced.  Thus, there was no
19  misrepresentation. Based on the facts alleged, the loan was properly initiated and Countrywide did
20  have the authority to close on the loan.  Accordingly, the Court GRANTS Countrywide's motion
21  to dismiss Plaintiff's fraud claim.

22
23      G.      Seventh Cause of Action: Rescission
    Plaintiff alleges he is entitled to rescind because "the note and contract were defectively
24  and/or fraudulently consummated in violation of applicable laws."  (FAC ¶ 98.)  Rescission is not
25  a cause of action, but a remedy.  See Cal. Civ. Code § 1689 (2009); Nakash v. Superior Court, 241
26  Cal. Rptr. 578, 584 (Ct. App. 1987).  Because Plaintiff's FAC fails to state a claim for which relief
27  can be granted, the Court GRANTS Countrywide's motion to dismiss the rescission claim.
28

H.     Eighth Cause of Action: Quasi Contract

Plaintiff alleges a quasi contract exists with Countrywide because Countrywide stated that Plaintiff had a contractual obligation to make payments to Countrywide on the Note, and Plaintiff made payments under a mistaken belief he was under a duty to do so.  (FAC ¶ 105-109.)  Plaintiff claims Countrywide was unjustly enriched because it received "fees, costs, commissions, payments, and/or other money" from Plaintiff, and therefore, Plaintiff is entitled to restitution. (FAC ¶¶ 107, 110.)

A claim for restitution based on unjust enrichment is synonymous with quasi-contractual recovery.  Supervalu, Inc. v. Wexford Underwriting Managers, Inc., 96 Cal. Rptr. 3d 316, 327 (Ct. App. 2009).  The elements of an unjust enrichment claim are the "receipt of benefit and [the] unjust retention of the benefit at the expense of others."  Lectrodryer v. SeoulBank, 91 Cal. Rptr. 2d 881, 883 (Ct. App. 2000).  "However, the mere fact a person benefits another is not of itself sufficient to require the other to make restitution therefor."  Cal. Fed. Bank v. Matreyek, 10 Cal. Rptr. 2d 58, 61 (Ct. App. 1992).  "The recipient of the benefit is liable only if the circumstances are such that, as between the two persons, it is unjust for the recipient to retain it."  Id.

Plaintiff's quasi contract claim is based on the contention that Plaintiff did not have a duty to make payments to Countrywide.  However, because this claim is predicated on the other causes of action, the Court finds Plaintiff has not pled sufficient facts to support a finding that it would be unjust for Countrywide to retain payments collected from him.

Accordingly, the Court GRANTS Countrywide's motion to dismiss the quasi contract claim.

H.     Ninth Cause of Action: Determination of Validity of the Lien

Plaintiff requests a determination and a declaration that the loan is void due to "defective documentation, false representations and/or fraud that induced Plaintiff to enter into the loan." (FAC ¶ 112).   Because this claim is predicated on the other causes of action, the Court GRANTS Countrywide's motion to dismiss this claim.

**CONCLUSION**

For the foregoing reasons, the Court:

(1) **GRANTS** Countrywide's request for judicial notice;

(2) **DENIES AS MOOT** Plaintiff's request for judicial notice; and

(3) **GRANTS** Countywide's motion to dismiss without prejudice all nine causes of action.

Plaintiffs have one more opportunity to amend the complaint to cure the deficiencies stated herein. Plaintiffs shall file the amended complaint **no later than 20 days** from the filing date of this order.

**IT IS SO ORDERED.**

**DATED: November 30, 2009**

**IRMA E. GONZALEZ, Chief Judge
United States District Court**